**Charles Thomas CORN, Petitioner–Appellee,**

v.

**Ralph KEMP, Warden, Georgia Diagnostic and Classification Center, Respondent–Appellant.**

**No. 81–7649.**

United States Court of Appeals, Eleventh Circuit.

Feb. 5, 1988.

Arthur K. Bolton, Atty. Gen., Robert S. Stubbs, II, Exec. Asst. Atty. Gen., Don A. Langham, First Asst. Atty. Gen., John C. Walden, Sr. Asst. Atty. Gen., Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant.

Harold A. Miller, III, Decatur, Ga., Brooks S. Franklin, Atlanta, Ga., for petitioner-appellee.

* See underlined Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before HILL, Circuit Judge, HENDERSON * and GARZA **, Senior Circuit Judges.

PER CURIAM:

On May 26, 1976, Charles Thomas Corn was convicted of armed robbery and murder in the Superior Court of Clayton County, Georgia, and was subsequently sentenced to death. Having found that the instructions on intent given to the jury in Corn's trial were unconstitutional, *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), we remanded the case to the district court with instructions to grant Corn's petition for a writ of habeas corpus unless the State retried him within a reasonable time. *Corn v. Kemp*, 772 F.2d 681 (11th Cir.1985).[1] The State of Georgia appealed this decision to the United States Supreme Court which remanded the case to us for further consideration in light of *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). *Kemp v. Corn*, — U.S. ——, 106 S.Ct. 3326, 92 L.Ed.2d 732 (1986). We withheld further consideration of this case pending the opinion in *Bowen v. Kemp* and *Dix v. Kemp*, 832 F.2d 546 (11th Cir.1987) (*en banc*) (*Bowen/Dix*). Because we are bound by this precedent, established in *Bowen/Dix*, we are compelled to hold that the constitutional error committed in this case was not harmless beyond a reasonable doubt.

In *Rose v. Clark*, the Supreme Court held that a *Sandstrom* violation is subject to harmless error analysis in accordance with the beyond a reasonable doubt standard from *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This circuit recognizes harmless error in

1. A complete procedural history of Corn's case is contained therein.

two circumstances: "(1) where the erroneous instruction was applied to an element of the crime that was not at issue in the trial, or (2) where the evidence as to the defendant's guilt was overwhelming." *Bowen/Dix,* 832 F.2d at 548.

Our assessment under the first circumstance is clearly governed by the *en banc* court's opinion in *Bowen/Dix.* In this case, as in both *Bowen* and *Dix,* the defendant raised an insanity defense which was rejected by the jury. The *en banc* court considered the question of whether a defendant, by asserting an insanity defense, places intent at issue so as to preclude the invocation of the harmless error doctrine. The court answered this question in the affirmative and held that "when a criminal defendant raises an insanity defense, a *Sandstrom* error ordinarily cannot be harmless on the grounds that intent is not at issue." 832 F.2d at 547. The only exception to that rule is in the rare case where a defendant removes the issue from the jury by admitting an intent to commit the act charged. 832 F.2d at 550 n. 13. Here, Corn never admitted an intent to kill Mary Long, the victim.

Having concluded that the error was not harmless under the first situation, we proceed to consideration of the second test. In deciding whether the evidence of a defendant's guilt was overwhelming, the crucial inquiry is whether the evidence of intent was overwhelming. 832 F.2d at 551. Furthermore, "[w]hen intent is at issue ..., we cannot infer overwhelming evidence of intent directly from the physical sequence that resulted in the victim's death. We must also look at the evidence of defendant's state of mind." *Id.*

In *Bowen/Dix,* the *en banc* court agreed with the conclusion of the *Dix* panel that the evidence of Dix's intent to kill was not overwhelming and disagreed with the panel decision in *Bowen* that the evidence of Bowen's intent to kill was overwhelming. Both murders were gruesome. Horace William Dix tortured his ex-wife and then stabbed her to death. Charles Bowen stabbed his twelve-year-old victim in the back as she tried to run away after he had raped her. When she turned around, he stabbed her in the chest. The victim then told him to go ahead and finish her off and he obliged by stabbing her an additional twelve to fourteen times.

In *Dix,* the defendant introduced evidence of a history of "possible" mental disability and a pattern of bizarre behavior near the time of the murder. He also presented the testimony of a psychiatrist, Dr. William P. Sapp, who had examined him and supported Dix's claims that he did not remember killing his ex-wife and that he was insane at the time of the killing. The State called its own expert, Dr. Miguel Bosch, who also examined Dix but reached a differing conclusion about his criminal responsibility for the murder. In *Bowen,* there was evidence which indicated that Bowen was extremely depressed and could not remember whom he had attacked. There was also conflicting expert testimony at the trial regarding Bowen's state of mind at the time of the murder. In light of this evidence, the *en banc* court concluded that in both *Dix* and *Bowen,* the evidence of intent to kill was not sufficiently overwhelming to warrant a finding that the *Sandstrom* error was harmless.

The murder in the present case was also gruesome. The victim had been stabbed repeatedly. However, it was no more so than the murders in *Dix* or *Bowen.* The evidence during the trial revealed that, following his arrest, Corn was questioned by Captain Quinlan of the Clayton County Police and made conflicting statements. Quinlan then ended the questioning and Corn's wife visited him in jail. When asked by his wife whether he had killed Ms. Long, Corn replied, "Yes, I killed the girl, but I didn't mean to." Another police officer also testified that when he inquired of Corn about the events at the time of the murder, Corn replied, "I hurt her, but I didn't mean to." Later, Corn told Captain Quinlan that the victim had lunged at him from across the service counter. When Quinlan pointed out that this statement was inconsistent with other elements of Corn's account, Corn became, in the officer's words, "hysterical."

As in *Dix*, Dr. Sapp testified for the defendant and Dr. Bosch testified on behalf of the State. Dr. Sapp stated unequivocally that in his opinion, Corn was not aware of, nor was he capable of knowing what he was doing at the time of the murder. Dr. Bosch, on the other hand, stated that although he thought Corn was sane when he examined him, he could not offer an opinion about Corn's state of mind on the date of the murder. As well, Dr. Bosch testified that Corn had told him repeatedly that he was not involved in any crime and had no recollection of the murder. In short, the evidence of intent in Corn's case is sufficiently analogous to that in *Bowen* and *Dix*. Consequently, we believe that, under these circumstances, we cannot say that the *Sandstrom* error was harmless.

Accordingly, the case is REMANDED to the district court with instructions to grant the writ unless the State of Georgia retries Corn within a reasonable time specified by that court.

GARZA, Circuit Judge, specially concurring:

I concur in this opinion only because I feel that I must.

I want to state that I do not agree with the en banc opinion of the Eleventh Circuit in *Bowen v. Kemp* and *Dix v. Kemp*, 832 F.2d 546 (11th Cir.1987), but I am sitting in the Eleventh Circuit, a circuit other than my own, and I feel that I am bound by the law of the circuit where I am sitting. If this was not so, I would hold that the *Sandstrom* violation was harmless error and would affirm the conviction of Corn. Feeling bound to follow the law of the Eleventh Circuit, I agree that the error was not harmless.