Bob Edward LANCASTER,
Petitioner–Appellant,

v.

Lanson NEWSOME,
Respondent–Appellee.

No. 88–8347.

United States Court of Appeals,
Eleventh Circuit.

Aug. 10, 1989.

---

**1.** Defense counsel merely objected again to the court's failure to give appellant's requested

Charge 34.

David A. Cook, Decatur, Ga., for petitioner-appellant.

Susan V. Bolevn, Asst. Atty. Gen., Dept. of Law, Atlanta, Ga., for respondent-appellee.

Before KRAVITCH and COX, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Petitioner, Bob Edward Lancaster, appeals from the district court's denial of his petition for habeas corpus relief. Lancaster was found guilty of murder in the Superior Court of Cobb County, Georgia, in June of 1982, and sentenced to life imprisonment. The Georgia Supreme Court affirmed his conviction and sentence on direct appeal. *Lancaster v. State*, 250 Ga. 871, 301 S.E.2d 882 (1983).

After three unsuccessful attempts to obtain a writ of habeas corpus in state court, Lancaster filed this petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254. Petitioner, who proceeded *pro se* in all his state court petitions, was represented by counsel at the federal level. In his federal petition, Lancaster alleged as grounds for relief that (1) the trial court gave unconstitutional burden-shifting jury charges, (2) the prosecution failed to reveal favorable treatment extended to key government witnesses, (3) his counsel was ineffective, (4) the composition of the jury was unconstitutional, and (5) the prosecution failed to reveal that armed robbery charges were pending against a key government witness.

The magistrate issued his report and recommendation that the petition be dismissed. On April 7, 1988, the district court entered an order denying habeas corpus relief. *Lancaster v. Newsome*, No. 1:87–CV–384–ODE (N.D.Ga. Apr. 7, 1988). Lancaster subsequently filed an application for a certificate of probable cause on May 5, 1988. A notice of appeal was filed May 17, 1988. A panel of this court concluded that while the notice of appeal was untimely as it was filed more than 30 days after the entry of final judgment, the application for a certificate of probable cause clearly evidenced an intent to appeal and was thus construed as a timely notice of appeal. *Lancaster v. Newsome*, 880 F.2d 362 (11th Cir.1988) (unpublished opinion). This appeal follows.

## FACTS

The district court, in reviewing Lancaster's federal petition for writ of habeas corpus, found the following facts:

According to the testimony at Petitioner's murder trial, Lancaster moved in with his sister, Margaret Lancaster, on February 15, 1980. The next day, Lancaster became involved in an argument with the victim, "Boozie" Baker, his sister's paramour. Everyone except the victim, Petitioner, and Petitioner's nephew, six-year old Tommy Lancaster, left the apartment after the argument began. Regina Higgins, the chief witness in the case, arrived at the apartment shortly thereafter. She testified that Lancaster and Baker were "hollering" at each other when she entered the apartment. Both men were in the kitchen. Higgins testified that she saw Lancaster go upstairs and then return. She noticed that Lancaster had a knife in his right hip pocket when he returned to the kitchen. Tommy Lancaster also testified that he saw the knife. He stated that Petitioner held the knife in his hand close to his right leg as he returned to the kitchen.

According to Higgins, Lancaster then approached Baker; the two men were separated by a small kitchen table. Higgins testified that Lancaster pushed Baker. Baker recovered then lunged toward Lancaster as he reached for a knife on the kitchen table. [In her prior statements, Ms. Higgins waivered [sic] in whether or not Baker reached for a knife. However, this is the version she gave at trial, and it is the version most favorable to Lancaster's claim of self-defense.] Higgins testified that she then saw Lancaster strike Baker in the chest with an upward sweeping motion. Baker staggered, then stumbled out the back door. Lancaster followed him out.

Another witness, Tommy Lee Bryant, who was outside the apartment at the time, testified that he saw Baker run out of the kitchen door with Lancaster in pursuit. Bryant testified that he saw Baker run underneath a clothes line. The clothes line caught Lancaster around the throat, and he fell to the ground. Lancaster then came back towards the apartment, saying "You're dead, mother f—er." The medical examiner testified

at trial that Baker died of a single stab wound to the heart.

*Lancaster v. State,* 250 Ga. at 871–72, 301 S.E.2d 882.

Lancaster's defense at trial was self-defense. The defense presented no evidence but instead relied on the cross-examination of the state's witnesses to assert this defense. Petitioner, who had voluntarily turned himself in to the authorities, did not testify at trial, nor did he make a statement to the police concerning the events surrounding Baker's death.

## DISCUSSION

### A. *Burden–Shifting Jury Charges*

Petitioner's first argument is that the trial court's charge to the jury impermissibly shifted to petitioner the burden of proof and persuasion on the issue of intent. Lancaster contends that the burden-shifting jury charges given at his trial were the exact charges found unconstitutional in *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Specifically, petitioner challenged in the state habeas corpus court the following language:

> The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted.... A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted.

To assist jurors in the difficult task of determining what a defendant intended during the commission of a crime, some courts have utilized mandatory presumptions in their instructions on intent. *See, e.g., Sandstrom v. Montana,* 442 U.S. 510, 513, 99 S.Ct. 2450, 2453, 61 L.Ed.2d 39 (1979) ("the law presumes that a person intends the ordinary consequences of his voluntary acts"); *see, e.g., Franklin,* 471

U.S. at 311, 105 S.Ct. at 1969–70 ("acts of a person of sound mind and discretion are presumed to be the product of the person's will"). The Supreme Court in *Sandstrom* and *Franklin* held that such jury instructions unconstitutionally removed from the government the burden of proving every element of the crime beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The Court reasoned that these instructions deprived a criminal defendant of due process because the charge may have been interpreted by the jury as shifting the burden of proof on intent—an essential element of the crime—to the defendant, thereby undermining his constitutional right to be presumed innocent. *Sandstrom,* 442 U.S. at 524, 99 S.Ct. at 2459. And as the Court clarified in *Franklin,* an accompanying instruction that any presumption of intent to act "may be rebutted" did not render the unconstitutional instruction constitutional. *Franklin,* 471 U.S. at 316–17, 105 S.Ct. at 1974.

■ The lesson of *Franklin* is clear —a mandatory rebuttable presumption concerning the issue of intent is impermissible under the Due Process Clause. We agree with petitioner that the intent instruction in this case created a mandatory rebuttable presumption which is virtually identical to the charges condemned in *Sandstrom* and *Franklin.* Since intent is clearly an element of malice murder under Georgia law, *see* O.C.G.A. Sec. 16–5–1 (1988), a presumption which in the mind of a reasonable juror could have relieved the state of its duty to prove every element of the offense beyond a reasonable doubt was constitutionally impermissible. Reviewing the instructions as a whole, we also conclude that the constitutionally infirm jury instruction was not unambiguously corrected by other language appearing in the charge.[1]

---

1. We note that the trial court properly instructed the jury that the accused is presumed innocent until proved guilty, and that the burden is on the state to prove the elements of the crime charged beyond a reasonable doubt. The court further instructed the jurors that they were not to be prejudiced against the defendant because an indictment was returned against him, nor

may they draw an adverse inference against him based on his failure to testify. However, the Supreme Court held in *Sandstrom* and reaffirmed in *Franklin* that such general instructions on the presumption of innocence and the state's burden of persuasion do not cure these infirm charges as they are "not rhetorically inconsistent with a conclusive or burden-shifting

Until recently, the question of whether *Sandstrom* errors could be harmless had not been authoritatively resolved. In *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court held that the harmless error standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)[2] applies to jury instructions that violate *Sandstrom* and *Franklin.* The Court in *Rose v. Clark* clearly instructed the court in reviewing a *Sandstrom* error not to set aside an otherwise valid conviction "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." 478 U.S. at 576, 106 S.Ct. at 3106 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).[3]

■ Having found language that unconstitutionally shifted the burden of proof in this case, we are now required by *Rose v. Clark* to undergo a harmless error review. If, on the facts of the case, the erroneous jury instruction was harmless, then the *Sandstrom* error would not require a new trial. In applying harmless error analysis to *Sandstrom* violations, this court has identified two situations where the harmless error doctrine can be invoked: "(1) where the erroneous instruction was applied to an element of the crime that was not at issue in the trial, or (2) where the evidence as to the defendant's guilt was overwhelming." *Bowen v. Kemp* and *Dix v. Kemp*, 832 F.2d 546 (11th Cir.1987) (consolidated en banc). Under the first situation, a *Sandstrom* error on intent may be

harmless where intent to kill is conceded by the defendant or otherwise not put in issue at trial. *See, e.g., Tucker v. Kemp*, 762 F.2d 1496, 1501 (11th Cir.1985) (en banc), *cert. denied*, 478 U.S. 1022, 106 S.Ct. 3340, 92 L.Ed.2d 743 (1986) (erroneous instruction on intent harmless where defendant's "sole defense was non-participation in killing"). Under the second prong of the harmless error test, a *Sandstrom* error may be harmless where the evidence of defendant's guilt is sufficiently overwhelming to make inclusion of the unconstitutional jury instruction irrelevant to the outcome of the jury verdict. *Dick v. Kemp*, 833 F.2d 1448, 1453 (11th Cir.1987). In deciding whether the evidence was overwhelming, the crucial inquiry relates to whether or not there exists overwhelming evidence of *intent*, rather than the more inclusive question of *guilt. Davis v. Kemp*, 752 F.2d 1515, 1521 n. 10 (11th Cir.1985).

■ We must consider both aspects of the harmless error test in this case: whether Lancaster's defense put the issue of intent squarely to the jury so that a *Sandstrom* error cannot be harmless under the first prong; and, if so, whether evidence at trial overwhelmingly showed intent to kill on the part of Lancaster. In a recent pronouncement on harmless error under *Sandstrom*, this court in *Bowen/Dix* held that when a defendant asserts a claim of insanity, the court may not ordinarily find a *Sandstrom* error to be harmless on the grounds that intent was not at issue. 832 F.2d at 547. The question arises in this case whether a *Sandstrom* error can be

---

presumption." *Sandstrom*, 442 U.S. at 518–19 n. 7, 99 S.Ct. at 2456 n. 7. Nor does the more specific instruction that "[a] person will not be presumed to act with criminal intention" cure the infirm charge because such instruction may refer to a broader element, malice, and are, at best, inconsistent with the impermissible mandatory instruction. *See Franklin*, 471 U.S. at 322, 105 S.Ct. at 1975.

**2.** In *Chapman*, the Supreme Court rejected the argument that errors of constitutional dimension necessarily require reversal of criminal convictions. The Court held, however, that "before a federal constitutional error can be held harmless, the court must be able to declare a

belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828.

**3.** The Supreme Court explained:

The thrust of the many constitutional rules governing the conduct of criminal trials is to ensure that those trials lead to fair and correct judgments. Where a reviewing court can find that the record developed at trial establishes guilt beyond a reasonable doubt, the interest in fairness has been satisfied and the judgment should be affirmed. As we have repeatedly stated, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one."

*Rose v. Clark*, 478 U.S. at 579, 106 S.Ct. at 3107.

harmless on the grounds that intent was not at issue when a defendant asserts the defense of self-defense. We have previously held that under Georgia law a defendant claiming self-defense may admit that the killing occurred, but does not necessarily concede intent to kill *Patterson v. Austin,* 728 F.2d 1389, 1395 (11th Cir.1984) (citing *Mason v. Balkcom,* 669 F.2d 222, 227 (5th Cir. Unit B 1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983)).[4] Accordingly, we hold that when a defendant claims self-defense, the court may not ordinarily find a *Sandstrom* error to be harmless on the grounds that intent was not at issue.[5]

■ Our harmless error analysis does not end, however, simply because a defendant raises a defense which contests the intent of a defendant. *See Baker v. Montgomery,* 811 F.2d 557, 558 (11th Cir.1987). In this circuit, failure to dispute an essential element of the crime such as intent

does not operate automatically to remove the issue entirely from the jury's consideration at trial and render a *Sandstrom* error on the element harmless. *Stephens v. Kemp,* 846 F.2d 642, 660 (11th Cir.1988). "But the defendant's defensive posture in a particular case may remain an important factor in the harmless error analysis even if the defense does not as a matter of law concede or remove from the jury's consideration the element on which the burden has been impermissibly shifted." *Id.* at 660. We have previously held, for example, that where the issue of intent is not disputed by the defendant at trial as part of his defense, the evidence on that issue may be more easily found to be overwhelming under the second prong of the harmless error test. *Id.,* (citing *Davis,* 752 F.2d at 1521; *Tucker,* 762 F.2d at 1501–02).[6]

In this case, Lancaster did not contest the issue of intent at his trial. Petitioner's defense posture was not that he lacked the

4. In *Mason,* we discussed the relationship between a claim of self-defense and the element of intent to kill as follows:

> Apparently, the district court believed that by raising self-defense the defendant admitted having the intent to kill. This analysis is too broad. When claiming self-defense, one does not necessarily admit intent to kill, but rather admits that the killing occurred. As the petitioner points out in his brief, one can shoot to kill in self-defense, shoot to wound in self-defense, shoot to frighten in self-defense, or even shoot reactively in self-defense with no specific purpose. The mere raising of self-defense clearly does not establish that the defendant had the intent to kill.

> 669 F.2d at 227.

5. In reaching its holding, the *Bowen/Dix* court recognized that in "rare situations" a defendant in presenting an insanity defense "may admit that the act alleged by the prosecution was intentional." 832 F.2d at 550 n. 13 (citing *Cooks v. Foltz,* 814 F.2d 1109, 1113 (6th Cir.1987)). Likewise, we recognize this exception in the context of self-defense.

6. *See Connecticut v. Johnson,* 460 U.S. 73, 87, 103 S.Ct. 969, 977, 74 L.Ed.2d 823 (1983) (Blackmun, J., writing for a plurality of four justices) ("In addition, an error may be harmless if the defendant conceded the issue of intent.... In presenting a defense such as alibi, insanity, or self-defense, a defendant may in some cases admit that the act alleged by the prosecution was intentional, thereby sufficiently reducing

the likelihood that the jury applied the erroneous instruction as to permit the appellate court to consider the error harmless.... We leave it to the lower courts to determine whether by raising a particular defense or by his other actions, a defendant himself has taken the issue of intent away from the jury.")

Although *Davis* and *Tucker* involved the defense of non-participation, we are persuaded that its reasoning is applicable to the facts of the present case. This court in *Tucker* noted:

> If a *Sandstrom* error can be harmless when the issue of intent is conceded, it is only a short step to hold that the harmless error doctrine should similarly be applicable where a defendant does not formally concede intent, but focuses his defense entirely upon alibi or a similar defense, in the face of overwhelming evidence that whoever committed the offense did so intentionally. When such overwhelming evidence of intent is left wholly unrebutted, it is not unreasonable to think that an appellate court can, depending upon all the facts and circumstances of the case, be satisfied beyond a reasonable doubt that the error was harmless. The appellate court can do so just as readily as in a case where the issue of intent was conceded.

> 762 F.2d at 1501–02 n. 4; *see also Brooks v. Kemp,* 762 F.2d at 1383, 1391 n. 10 (11th Cir. 1985). We note that this court has previously utilized the reasoning of *Davis* and *Tucker* in the context of self-defense. *See Stephens,* 846 F.2d at 660.

requisite intent to kill;[7] rather, the defense at trial focused entirely on whether Lancaster was justified in killing Baker. While intent remained at issue in the sense that it was not conceded and the burden of proof remained on the state, we consider as significant the fact that the defense did not contest the issue of intent, thus leaving unrebutted the government's evidence that the killing was intentional. *Tucker v. Kemp,* 762 F.2d 1496, 1501 (11th Cir.1985). Accordingly, although Lancaster's defense posture "does not by itself conclude the harmless error analysis, it is relevant to our consideration of ... whether the evidence of guilt was overwhelming." *Id.* at 1502; *Davis,* 752 F.2d at 1521.

Having concluded that the error was not harmless under the first prong of the harmless error test, we proceed to a consideration of the second situation: whether the evidence at trial overwhelmingly established Lancaster's intent to kill. In holding that a defendant ordinarily does not concede intent as to the consequences of his acts by pleading the defense of insanity, the *Bowen/Dix* court noted that "[w]hen intent is at issue, ... we cannot infer overwhelming evidence of intent directly from the physical sequence that resulted in the victim's death. We must also look at the evidence of defendant's state of mind." 832 F.2d at 551. In *Bowen,* the evidence conclusively established that the defendant killed his twelve-year-old victim by repeatedly stabbing her after he had raped her. The defendant in *Dix* tortured his ex-wife and then stabbed her to death. In both cases, the defendants pleaded not guilty by reason of insanity. In both cases, expert testimony was admitted which raised a question as to each defendant's sanity at the time of the murder. In both cases, a majority of the en banc court concluded that the evidence of the defendant's state of mind was sufficiently plausible to prohibit the finding that a burden-shifting

jury instruction involving intent was harmless.

In a subsequent case, *Corn v. Kemp,* 837 F.2d 1474 (11th Cir.1987), a panel of this court applied the harmless error analysis to an equally gruesome murder. The defendant also presented expert testimony at trial supporting his insanity defense. The panel determined that the evidence regarding the defendant's state of mind raised the question of intent in a manner sufficient to prohibit a finding that the *Sandstrom* error was harmless. *Id.* at 1477.

As in the three cases mentioned above, the evidence at Lancaster's trial proved overwhelmingly that he committed the physical acts which resulted in the victim's death. The intent issue in this case differs, however, from *Bowen/Dix* and *Corn* in two significant ways. First, the three cases cited above involved an insanity defense. An insanity defense raises the question of whether the defendant is capable of forming the requisite intent such that he can be held legally accountable for his actions. In a self-defense case such as the present one, the defendant may have the intent to kill his victim but still be found not guilty, so the question becomes whether the accused acted with malice or was justifiably protecting himself. Thus, the issue of intent plays a slightly different role in a self-defense case than it does in an insanity case.

Second, and most importantly, in all of the above cases there was substantial evidence at trial concerning defendant's state of mind at the time of the murder. In *Bowen,* there was evidence, supported by expert testimony, indicating that the defendant was extremely depressed and could not remember whom he had attacked. In *Dix,* the examining psychiatrist supported Dix's claim that he did not remember killing his ex-wife. Likewise, in *Corn,* an

---

7. In this respect, this case is distinguishable from *Franklin.* Franklin's sole defense to the malice murder charge was a lack of the requisite intent to kill. The facts did not overwhelmingly preclude that defense. Franklin offered substantial evidence tending to show a lack of intent. A presumption that Franklin intended to kill completely eliminated his defense of "no intent." Because intent was plainly at issue in *Franklin,* and was not overwhelmingly proved by the evidence, the court could not find the erroneous instruction on intent to be harmless. 471 U.S. at 325–26, 105 S.Ct. at 1977.

expert witness who testified for the defense opined that, on the day of the murder, defendant did not know what he was doing. The defendant's statement that he didn't mean to hurt the victim was also offered to explain the defendant's intent. Thus, all three cases contained substantial evidence regarding the defendant's state of mind as to his ability to form the requisite intent to kill because of insanity.

In this case, the district court found that absolutely *"no"* evidence concerning petitioner's state of mind was presented to the jury to contest intent. Lancaster made no statements to the authorities to the effect that he did not intend to kill the victim, nor did he take the stand at trial to explain his state of mind at the time of the killing. The court made clear in a footnote, however, that it was not inferring guilt because petitioner relied upon his constitutional right not to testify, but was simply acknowledging that certain type of evidence, specifically "evidence of defendant's state of mind," was not offered by way of Lancaster's own testimony. Defense counsel presented the jury with the invitation to infer from the "physical sequence that resulted in the victim's death" that Lancaster acted in self defense, but this argument was not accompanied by any evidence regarding the defendant's state of mind.

■ It is this total lack of evidence concerning the defendant's state of mind which distinguishes this case from cases such as *Bowen/Dix* and *Corn.* Consequently, the reviewing court must determine from the narrative of the physical sequence of events whether Lancaster's intent to kill was proved overwhelmingly because no other type of evidence was offered. We conclude that, under the particular circumstances of this case, the district court properly relied on the physical sequence of events in determining whether the evidence of intent to kill was overwhelming.

■ It should be emphasized that juries are free to infer intent from conduct. *See Brooks v. Kemp,* 762 F.2d 1383, 1423 (11th Cir.1985) (Kravitch, J., concurring and dissenting) (" 'intent', by its very nature, cannot be proven by direct evidence, unless the defendant expressly states his intent"); *see also Rose v. Clark,* 478 U.S. at 581, 106 S.Ct. at 3107. ("[I]n many cases where there is no direct evidence of intent, ... intent is established [by inference from defendant's conduct]"). The constitutional error in this case is not that the jury was *allowed* to presume Lancaster's intent to kill,[8] rather the error here is that the jury was *compelled* to presume such intent, thus shifting the burden of proof to the defendant. *Brooks,* 762 F.2d at 1423 (Kravitch, J., concurring and dissenting). While the jury was improperly instructed to rely on the presumption as a means of finding intent, it is clear that "there may be many cases in which the facts and circumstances so conclusively establish this element that the instruction is wholly superfluous." *Connecticut v. Johnson,* 460 U.S. at 95, 103 S.Ct. at 981, (Powell, J., dissenting); *see Rose v. Clark,* 478 U.S. at 580–81, 106 S.Ct. at 3107. ("In many cases, the predicate facts conclusively establish intent, so that no rational jury could find that the defendant committed the relevant criminal act but did not intend to cause injury.").

■ In this case, the sequence of events leading to the death of Baker overwhelmingly establish Lancaster's intent to kill. The district court concluded that while there was some evidence supporting petitioner's claim of self-defense, including a verbal altercation between two men and some testimony of Regina Higgins that the victim reached for a knife after being shoved by petitioner, in direct and overwhelming contrast was evidence:

[P]roving that Lancaster had a murderous intent [which] included (1) the fact there was a verbal altercation, (2) Higgins' testimony that he [petitioner] went

---

8. In *Franklin,* the Supreme Court made it clear that permissive presumptions or inferences do not violate the Due Process Clause, except where they are patently unreasonable. 471 U.S.

at 314–15, 105 S.Ct. at 1971 (citing *Ulster County Court v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224–25, 60 L.Ed.2d 777 (1979)); *see Brooks,* 762 F.2d at 1423.

upstairs to get a knife before there was any physical contact between himself and Baker, (3) her testimony that he shoved Baker before Baker reached for a knife on the table, and (4) that he chased Baker out of the door after stabbing him rather than retreat. In light of this evidence, despite the eloquent argument of counsel at trial, the court must conclude that proof of Lancaster's intent to kill was overwhelming.

From the overwhelming evidence of intent to kill in the present case, it is clear beyond a reasonable doubt that a rational jury would have found it unnecessary to rely on the erroneous presumption in deciding the issue of intent.[9] In other words, even absent the erroneous charge on intent, no rational jury would have drawn any other inferences from Lancaster's conduct but that he intended to kill his victim. Thus, we conclude that the *Sandstrom* violation was harmless error.

Lancaster also asserts that the trial court's instructions on malice were impermissibly burden-shifting and that the jury should have been charged on the state's burden of proof as to self-defense. We find that the "malice shall be implied" instruction was not clearly raised below and specifically not considered by the district court. Even assuming that the malice instruction was raised below, however, the

challenge affords no basis for relief as it is identical to charges found constitutional in *Lamb v. Jernigan,* 683 F.2d 1332 (11th Cir.1982) and *Humphrey v. Boney,* 785 F.2d 1495 (11th Cir.1986).[10] In addition, petitioner contends for the first time before this court that the trial court erred in not charging the jury on the state's burden of proof on the issue of self-defense. This issue clearly was never raised below by petitioner nor considered by the district court. Thus, this court declines to decide these issues raised for the first time on this appeal. *Stephens v. Zant,* 716 F.2d 276, 277 (5th Cir.1983).

### B. *Brady Claims*

Petitioner's second and fifth ground for relief is that the government failed to disclose "favorable treatment" to key government witnesses. Specifically, Lancaster urges in ground two of his federal petition that Regina Higgins was on probation at the time of her testimony and was extended favorable treatment in exchange for her trial testimony. In ground five of his petition, petitioner claims that the state failed to disclose favorable treatment to Tommy Lee Bryant. These grounds present claims under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), for prosecutorial misconduct in failing to turn over potential impeachment evidence.[11]

---

**9.** In *Rose v. Clark,* 478 U.S. at 583, 106 S.Ct. at 3105, the Court noted that "in cases of *Sandstrom* error, 'the inquiry is whether the evidence was so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption.'" (Citing *Connecticut v. Johnson,* 460 U.S. at 97 n. 5, 103 S.Ct. at 982–83 n. 5 (Powell, J., dissenting)).

**10.** Lancaster asserts that the following charge impermissibly shifted the burden of proof on an essential element of the crime charged:

> Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing showed an abandoned and malignant heart.

We have previously considered and upheld a challenge to the same jury charge in *Lamb* and *Humphrey,* cited above. The *Lamb* court noted, "[i]n view of the strong circumstantial evidence instruction preceding this [the implied malice] instruction, ... we cannot conclude that reasonable jurors would have interpreted the latter

[charge] as changing the reasonable-doubt burden of proof they were initially told the prosecutor had to meet." 683 F.2d at 1340. The circumstantial evidence charge preceding the implied malice instruction in this case was equally as strong as that furnished in *Lamb* and *Humphrey.* Thus, viewing the instructions as a whole, we find that any ambiguity in jury instruction on implied malice "could not have been understood by a reasonable juror as shifting the burden of persuasion." *Franklin,* 471 U.S. 307, 105 S.Ct. at 1973; *see Stephens v. Kemp,* 846 F.2d 642, 659 (11th Cir.1988) (holding that the "malice shall be implied" language did not impermissibly shift the burden of proof on malice.)

**11.** In *Brady v. Maryland,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–97. The Su-

■ The government argues that these allegations are barred as a matter of state law because they were not raised until Lancaster's second state habeas petition.[12] Georgia law provides that claims not raised in an original or amended petition for habeas corpus are deemed waived by virtue of the petitioner's procedural default. O.C.G.A. Sec. 9–14–51 (1982). Grounds that could have been raised in an earlier petition are waived in a subsequent habeas corpus petition unless the federal or state constitution otherwise requires, or the presiding judge finds grounds in the subsequent petition which could not reasonably have been raised in the original or amended petition.[13] *Id.; see, e.g., Dix v. Zant,* 249 Ga. 810, 811, 294 S.E.2d 527 (1982); *Smith v. Zant,* 250 Ga. 645, 647, 301 S.E.2d 32 (1983).

■ A federal habeas court will not consider an issue if the petitioner did not pursue that issue in the state court and thereby committed a procedural default, unless he can demonstrate cause for and actual prejudice from the default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). This court has recently held that the "cause and prejudice" test will be applied to claims in a federal petition which

are barred by a state's successive petition rule. *Presnell v. Kemp,* 835 F.2d 1567 (11th Cir.1988). Accordingly, we must abide by a state court's imposition of its procedural default rule when correctly applied unless cause and prejudice is shown. *Sinclair v. Wainwright,* 814 F.2d 1516, 1522 (11th Cir.1987).

The state court found that the allegation regarding the favorable treatment of Regina Higgins was procedurally defaulted by petitioner's failure to raise the claim in the first petition in Tatnall County. Both the magistrate and the district court honored the finding of procedural default by the state habeas corpus court. The district court found that, during the hearing on his first Tatnall County petition, petitioner questioned his trial counsel regarding counsel's efforts to obtain exculpatory material from the prosecution. He did not, however, raise as separate grounds for relief the allegation that the government failed to comply with the *Brady* motion that Lancaster's attorney had filed. Thus, according to the district court, Lancaster procedurally defaulted on this claim.

We conclude that the court below properly honored the finding of successiveness by the state habeas corpus court as to petitioner's contention that the prosecutor withheld impeachment evidence concerning Ms.

preme Court has determined that "[i]mpeachment evidence, [ ] as well as exculpatory evidence, falls within the *Brady* rule." *See United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).

**12.** At the district court, there was a dispute regarding Lancaster's first habeas petition filed in state court. Following his conviction, but prior to his appeal, Lancaster filed a writ of habeas corpus in the Superior Court of Habersham County where he was incarcerated. Although styled as a writ of habeas corpus, that petition primarily concerned the appointment of counsel and the location of his imprisonment. The district court concluded that this document was properly construed as a motion to return to the county of conviction under O.C.G.A. Sec. 42–5–50.

Lancaster filed a second petition for writ of habeas corpus in the Superior Court of Tatnall County, Georgia, in 1984. Although the state court determined that this second writ was successive in light of the first writ filed prior to Lancaster's appeal, the court did not dismiss the

petition on those grounds. Instead, after a full hearing, the court ruled on all the grounds presented in the petition. Lancaster then filed a third petition in 1985 in Tatnall County. This third petition was dismissed as successive under O.C.G.A. Sec. 9–14–51. The Georgia Supreme Court refused to entertain an appeal. We find that the district court properly treated Lancaster's second habeas petition, the first in Tatnall County, as his first state court petition in determining whether his claims should be barred.

**13.** Georgia's successive petition statute, O.C.G.A. Sec. 9–14–51 provides:

All grounds for relief claimed by a petitioner for a writ of habeas corpus shall be raised by a petitioner in his original or amended petition. Any grounds not so raised are waived unless the Constitution of the United States or of this state otherwise requires or unless any judge to whom the petition is assigned, on considering a subsequent petition, finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.

Higgins. Lancaster clearly was aware of the basis for raising the claim of favorable treatment at the time of the first habeas action, but pursued this only in the context of questioning counsel and did not raise it as a substantive due process claim under *Brady.*[14] Under Georgia's successive petition rule, O.C.G.A. Sec. 9–14–51, a petitioner is barred from raising in a subsequent habeas petition a claim that reasonably could have been raised in an earlier or original petition. *See Presnell,* 835 F.2d at 1575; *Morris v. Kemp,* 809 F.2d 1499 (11th Cir.), *cert. denied,* 482 U.S. 907, 107 S.Ct. 2486, 96 L.Ed.2d 378 (1987). Thus, petitioner has committed procedural default with respect to the second ground of his federal petition.

⬛ Pretermitting the question of cause, the district court also found that Lancaster could not demonstrate that he was prejudiced by the government's failure to turn over evidence which may have impeached Ms. Higgins. The court specifically credited the testimony of trial counsel at the state habeas hearing that he did not want to obtain her criminal record because he did not want to impeach her. Counsel testified that Ms. Higgins' testimony was "critical" to their defense as she was the only source of evidence that the victim may have reached for a knife on the kitchen table, supporting petitioner's claim of self-defense. As the court noted, "[i]mpeaching her testimony would have been counterproductive." Moreover, pursuant to the

*Brady* motion filed by petitioner's trial counsel, the trial court reviewed the government's entire file to determine whether there was any further exculpatory material which had not been furnished to the defense. After conducting an *in camera* inspection of the state's file, the court turned over to petitioner's counsel one additional piece of evidence which the state had not provided. The district court found that petitioner failed to provide "any evidence ... indicating that there was, in fact, evidence of favorable treatment given to Ms. Higgins." Having failed to meet the cause and prejudice standard under *Presnell,* we agree with the lower court that petitioner is barred from raising this claim in his federal petition.[15]

In ground five of the petition, petitioner contends that the prosecutor also failed to disclose favorable treatment to Tommy Lee Bryant. The court below noted that petitioner never specified what favorable treatment was allegedly given Bryant. The court found it was "not quite clear" whether Lancaster was raising the issue as a substantive *Brady* violation or as an extension of his ineffectiveness claim. If the issue was being raised as a *Brady* claim, the court noted that petitioner was barred for not having raised the issue in his earlier state petition, as explained in the court's treatment of the similar claim regarding Regina Higgins. In reviewing this argument as part of the ineffectiveness claim, the court below ruled that petitioner did

---

**14.** The transcript of petitioner's state habeas hearing indicates that he had an understanding of *Brady v. Maryland* when he questioned his attorney about the *Brady* motion that had been filed. Lancaster admitted before the state habeas court that his attorney had filed a discovery motion under *Brady v. Maryland,* and that an in camera inspection of the state's file was conducted. In cross-examining trial counsel on the issue of ineffectiveness, it is clear that petitioner broached the subject of whether the state had given favorable treatment to Ms. Higgins, but petitioner never asserted these matters as substantive due process claims.

**15.** We note that petitioner also argues that he was not afforded a full and fair hearing as to "cause and prejudice" for the claims deemed in default. In support of his argument for a federal evidentiary hearing, Lancaster relies primari-

ly on the fact that he proceeded *pro se* in the original Tatnall County action. We emphasize, however, that the lack of counsel does not *per se* establish a basis for a federal evidentiary hearing because there is no right to the assistance of an attorney in state collateral attacks. *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *Carter v. Montgomery,* 769 F.2d 1537, 1543 (11th Cir.1985). "The test that federal courts must apply to determine whether an evidentiary hearing is necessary is whether the lack of counsel at the state hearing resulted in a lack of fundamental fairness." *Carter,* 769 F.2d at 1543 (citing *Norris v. Wainwright,* 588 F.2d 130 (5th Cir.), *cert. denied,* 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979)). We hold that petitioner's lack of counsel at the state habeas hearing did not result in a lack of fundamental fairness.

not demonstrate sufficient prejudice to render his counsel ineffective for failing to impeach the testimony of Tommy Lee Bryant. The court found that Bryant's testimony was largely corroborative of the testimony offered by Regina Higgins and Tommy Lancaster, and that the only "independent" testimony provided by Bryant was simply the incident regarding petitioner being caught by the clothesline and yelling to the victim, "You're dead...." The court held, "In the total absence of Bryant's testimony, there was sufficient evidence to demonstrate [Lancaster's] guilt."

■ We conclude that petitioner was properly barred from litigating this issue on the merits. Petitioner specifically questioned counsel regarding Mr. Bryant at the state habeas corpus hearing. Petitioner never raised a substantive *Brady* claim regarding any alleged favorable treatment given to Bryant in exchange for Bryant's testimony in the first state collateral action, although petitioner obviously had knowledge of the subject and could reasonably have raised such a claim.[16] Thus, like his allegation regarding the favorable treatment of Ms. Higgins, Lancaster committed procedural default for his failure to have raised the substantive issue in his first Tatnall petition. *See* O.C.G.A. Sec. 9-14-51. In order to establish prejudice for his procedural default, petitioner must show that had the alleged favorable treatment in exchange for the testimony of Mr. Bryant been revealed to the jury, the result of the trial would have been different. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1987); *see also McCleskey v. Kemp*, 753 F.2d 877, 882–85 (11th Cir.1985) (*en banc*). As found by the district court, petitioner cannot make the requisite showing of prejudice because the testimony of Bryant is largely corroborative of other testimony and fails to satisfy the standard of *Bagley*.

Thus, this allegation affords no basis for relief.

## C. *Ineffective Assistance of Counsel*

Lancaster's third ground for relief is that he was denied effective assistance of counsel at trial. Since petitioner raised this argument in his state court petition, we will review the merits of his claim. Petitioner raises three specific instances of ineffectiveness: (1) counsel's failure to adequately investigate the case; (2) his failure to object to the array of the panel of jurors; and (3) counsel's failure to object to the burden-shifting jury charges.

■ The ineffectiveness claim was extensively reviewed at Lancaster's prior habeas hearing in state court. While a claim of ineffectiveness is a mixed question of fact and law, a federal court must treat the state court's finding of fact with substantial deference. *Martin v. Kemp*, 760 F.2d 1244 (11th Cir.1985); 28 U.S.C. Sec. 2254(a). In this case, the state court found that petitioner's attorney interviewed all the eyewitnesses, and the other witnesses suggested to him by petitioner. The court further determined that the attorney interviewed all the police officers connected with the case and investigated the crime scene. In addition, counsel filed a *Brady* motion and obtained an *in camera* inspection of the prosecution's file by the trial court. Based on his investigation, trial counsel developed and presented the theory of self-defense. The district court, noting that petitioner did not present any reason to believe these findings were erroneous, concluded that Lancaster's claim of a lack of investigation was completely "without merit."

■ Petitioner also contended that counsel was ineffective for not objecting to the array of the petit jury. Lancaster is black. He was tried by an all white jury in Cobb County, Georgia. The district court

---

**16.** Petitioner specifically questioned counsel regarding Bryant at the state habeas corpus hearing. The record shows that counsel had interviewed Bryant prior to trial and was aware Bryant had a prior conviction but did not obtain his record. Petitioner asked if counsel knew whether Ms. Higgins and Bryant had criminal charges pending against them at the time of trial. After counsel answered the question as to Ms. Higgins, petitioner did not follow up on his questioning regarding Bryant.

credited counsel's testimony before the state habeas corpus court that counsel made a strategic decision not to file such a challenge. Counsel explained that he did not object to the composition of the jury in a timely manner because in his opinion the method of choosing jurors in Cobb County was constitutional; a challenge to such an array of jurors in Cobb County has never been sustained; and that such a motion would not have been successful. The district court relied on *Griffin v. Wainwright*, 760 F.2d 1505, 1514 (11th Cir.), *reh'g denied*, 765 F.2d 1123 (1985), where this court held that an informed tactical decision by counsel is not normally a basis for habeas relief, in concluding that Lancaster did not produce "any evidence indicating that his trial counsel was unreasonable in deciding not to file what he believed to be a meritless motion."

■ Finally, Lancaster argues that his trial counsel's failure to object to the burden-shifting instructions rendered his assistance ineffective. The district court assumed for the sake of argument that while an objection should have been made, Lancaster could not make the requisite showing of prejudice "because of the overwhelming proof of intent demonstrated at trial." *See Carter v. Montgomery*, 769 F.2d 1537, 1544 (11th Cir.1985) (where the court held that counsel's failure to object to burden-shifting jury charge did not deprive petitioner of counsel guaranteed by the Sixth Amendment).

Under the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*, 466 U.S. at 687,

104 S.Ct. at 2064. In addition, petitioner must demonstrate that his counsel's deficient performance prejudiced his defense. Prejudice is established where there is a "reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■ We conclude that the findings of the district court are amply supported by the record. In reviewing a claim of ineffective assistance of counsel, we must examine counsel's total performance and the effect of that performance "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987). Moreover, we emphasize that petitioner was not entitled to error-free representation, only representation that fell within the range of competence demanded of attorneys in criminal cases and conformed to professional standards of reasonable investigation of facts and understanding of the law. *Birt v. Montgomery*, 725 F.2d 587, 597 (11th Cir.1984). A careful review of the record as a whole confirms the district court's conclusion that Lancaster's trial counsel afforded him adequate and reasonably effective assistance.

D. *Unconstitutional Composition of the Jury*

■ In ground four of his federal petition, Lancaster asserts that his petit jury was unconstitutionally composed as it contained no members of his race.[17] Under Georgia law, a criminal defendant must file a timely jury challenge at the trial. O.C. G.A. Sec. 15–12–162 (1985); Sec. 9–14–42(b) (1982).[18] It is undisputed that the defense

---

17. Although this claim was not succinctly stated, and neither party mentions *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), petitioner does seem to be making a *Batson*-type claim. The Court in *Batson* held that the prosecutor's use of peremptory challenges to exclude blacks from a jury trying a black defendant may violate equal protection. However, the Supreme Court in *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), held that a *Batson* claim was not to be retroactively applied to habeas petitions.

18. O.C.G.A. Sec. 15–12–162 states:

The accused may, in writing, challenge the array for any cause going to show that it was not fairly or properly impaneled or ought not to be put upon him. The court shall determine the sufficiency of the challenge at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed.

O.C.G.A. Sec. 9–14–42(b) provides in pertinent part:

failed to make a timely challenge at trial. Thus, this failure constitutes a procedural default and Lancaster must establish cause for and actual prejudice from this procedural default in order to excuse the untimely jury claim. *Birt v. Montgomery*, 725 F.2d 587, 596–601; *Amadeo v. Kemp*, 816 F.2d 1502 (11th Cir.1987).

The state habeas corpus court credited counsel's testimony that he did not file a jury challenge for strategic reasons. The district court also credited the tactical decision of trial counsel not to file such a challenge as "counsel believed such an objection would be meritless." The court noted that petitioner conceded that the failure to make a timely jury challenge was a procedural default. Thus, according to the court below, his challenge to the composition of the jury "collapses into an ineffective assistance of counsel claim" which the court already found lacked merit.

The only "cause" which petitioner alleges to excuse this procedural default is ineffective assistance of counsel. In *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), the Supreme Court held that attorney error, unless it amounts to ineffective assistance of counsel in violation of the Sixth Amendment, does not constitute "cause" for a procedural default under the rule of *Strickland v. Washington*. We have found that petitioner was afforded reasonably effective assistance of counsel. Accordingly, we conclude that Lancaster has not established sufficient "cause" to excuse the untimely jury challenge.

## CONCLUSION

For the foregoing reasons, the judgment of the district court denying habeas corpus relief is AFFIRMED.

The right to object to the composition of the ... trial jury will be deemed waived ... unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection after conviction and sentence has otherwise become final.