## 36416. THOMAS v. THE STATE.

JORDAN, Presiding Justice.

Dexter Thomas was found guilty of murder and hindering the apprehension of a criminal and sentenced to life imprisonment with a five-year consecutive term on probation. This is his appeal.

The evidence presented at appellant's trial showed that he, his girl friend Sherill Land, Keith Fair, his girl friend Becky Nation and Jackie Morris had been drinking and shooting pool throughout the day of May 8, 1979, at appellant's and Land's home in Alto, Georgia. Another friend, Beetle Turner, joined them that night, already intoxicated and carrying a gun. Fair, Morris, and Turner were leaving to get more liquor when appellant joined them, over the protest of Land. Once the four men purchased the liquor, according to a prior agreement between Fair and Turner, they burned the trailer of Morgan Whitlock, a man who had had Turner arrested earlier that day. When Turner failed to pay Fair enough money for the arson, Fair shot and killed Turner in Habersham County. Appellant and Morris loaded Turner's body in the trunk of Morris' car in which they were riding, and the three returned to appellant's house. En route, Fair asked appellant if Land could be trusted to stay quiet about this murder.

Fair demanded that appellant and Morris remove their blood-stained clothes and give them to him. At all times, Fair kept

possession of the gun, often displaying it in plain view. Fair and Nation left in Fair's borrowed Mustang, instructing appellant and Land to follow him in Turner's truck and Morris to follow him in Morris' car which still contained Turner's body. They met on a dirt road where appellant and Morris loaded Turner's body into his truck and then Fair pushed the truck into Lake Lanier. All agreed to meet at a restaurant.

Fair and Nation left the other three at the restaurant and drove to the home of Bradley Highfield. Highfield agreed to let Fair use his Volkswagen and accompanied Fair and Nation. Appellant, Morris, and Land had by this time left the restaurant and were returning home when Fair, Nation and Highfield caught up with them and beckoned them to follow. Fair, driving the Volkswagen, led them to another dirt road, ostensibly for the purpose of burning Morris' car. Morris pulled his car to one side of the road, and Fair parked the Volkswagen behind it. Morris, somewhat reluctant to burn his car, persuaded Fair to let him remove the radio and tires so he could tell his insurance company that it had been stolen. Fair began removing one of the tires, while Highfield, appellant, and Nation, passed out in the back seat, remained in the Volkswagen. Land stood behind Morris' car. Fair pretended to have trouble removing the tire. When Morris bent over to help him, Fair shot Morris three times in the head.

Appellant jumped out of the Volkswagen and told Land to get back into the car. Fair ordered appellant to load Morris' body into the front seat. Appellant complied. At this point appellant allegedly leaned into Morris' car and cut his throat with a pocket knife.[1] Appellant returned to the Volkswagen, and Fair set Morris' car on fire with his body behind the steering wheel. Fair returned to the Volkswagen, telling the others that he had killed Morris because he had been a "rat on the chain gang," and that they had all better keep quiet.

---

[1]Evidence at trial of appellant's cutting Morris' throat was much in dispute. Appellant and Land testified that he did not carry a knife, and did not have one that night. Fair testified that he had a knife and leaned in the car over Morris' body with his shirt wrapped around Morris' face so he would not be able to see his face while he cut his throat, but Fair admitted that he did not actually see appellant cut the victim's throat. Highfield testified that he saw appellant with a knife and that appellant returned to the car and told him that Morris had the "toughest skin he's ever seen to cut . . .," but he admitted that he did not see appellant cut his throat. The coroner testified that there was no way to tell if Morris' throat had been cut because of the burned condition of the remains of the body. The district attorney told the jury in his closing argument after noting these disputes "regardless of whether this man's throat was cut [,] this man [appellant] is a party to the crime." The trial judge

Appellant and Land stayed with various relatives for the next few days, and both admittedly lied to the police about the two murders because they were afraid of Fair. Once Fair had been arrested, appellant cooperated with the investigating officers and testified at both Fair's sentencing hearing and Highfield's trial.

Fair pleaded guilty to Morris' murder. After his sentencing hearing, he was sentenced to death, his sentence affirmed on appeal. See *Fair v. State,* 245 Ga. 868 (268 SE2d 316) (1980); judgments of affirmance of the death penalty adhered to, June 24, 1980.[2] Highfield was convicted of murder and hindering the apprehension of a criminal and was sentenced to life and five years consecutively. His appeal to this court was affirmed. *Highfield v. State,* 246 Ga. 478 (1980). Appellant was then tried and convicted.

Appellant's sole enumeration of error concerns the trial judge's charge to the jury on Code Ann. § 26-906, which provides as follows: "A person is not guilty of a crime, *except murder,* if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury." (Emphasis supplied.)

Appellant's defense was based upon his reasonable fear of Fair for both his life and Sherill Land's. He maintains that Code Ann. § 26-906 should apply only to the actual perpetrator of the murder and not to an unwilling accomplice who does not actually kill the victim though he is coerced into being a party to the crime. See Code Ann. § 26-801 (for the definition of a "party"). Appellant argues that the charge on Code § 26-906 arbitrarily denies him his right to urge coercion as a defense. The trial judge charged the jury on coercion informing them that coercion could be a defense to the charge of hindering the apprehension of a criminal, but not to murder.

The Criminal Law Study Committee's Notes on the enactment of Code Ann. § 26-906 explain the addition to the former law, Code Ann. §§ 26-401, 402, removing the defense of coercion to a charge of murder, as adopting the common law approach that one should die himself before killing an innocent victim. See Committee Notes, Chapter 26-9, Title 26 Ga. Code Ann., p. 126. We interpret this reasoning to apply to a party to murder as well. One does not have to

charged extensively the law on being a party to a crime.

[2]Fair was subsequently acquitted of Turner's murder by a Habersham County jury. However, as we noted in Fair's appeal to this court from his death sentence for Morris' murder, "we can unhesitatingly say that the evidence of the first homicide [Turner's murder] presented in the instant case was entirely sufficient to prove it." *Fair v. State,* 245 Ga. at 872, n. 1.

be the actual "trigger man" to be convicted of murder in this state as long as the evidence is sufficient to demonstrate that one is a party to the crime. See *Garland v. State,* 235 Ga. 522 (221 SE2d 198) (1975).

Reviewing the evidence in this case in the light most favorable to the verdict, we hold that a rational trier of fact could have found the appellant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur, except Hill and Clarke, JJ., who concur in the judgment only.*

Submitted June 27, 1980 — Decided September 17, 1980.

*Edward W. Clary,* for appellant.

*Jeff C. Wayne, District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.