Jimmy Don HALL,
Petitioner–Appellant,

v.

Ira KELSO, Warden,
Respondent–Appellee.

No. 88–8506.

United States Court of Appeals,
Eleventh Circuit.

Jan. 29, 1990.

As Amended March 23, 1990.

Joseph H. Gibson, Wunder, Ryan, Cannon & Thelen, Washington, D.C., for petitioner-appellant.

Mary Beth Westmoreland, State Law Dept., Atlanta, Ga., for respondent-appellee.

Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Jimmy Don Hall is currently serving a life sentence for felony murder. At his trial, the judge instructed the jury that the "acts of a person of sound mind and discretion are presumed to be the product of the person's will." Taken in the context of the entire jury instructions, we find that a reasonable juror could have applied that presumption in deciding whether Hall had the requisite criminal intent, and thus violated his constitutional right that the state be required to prove every element of the offense beyond a reasonable doubt. Accordingly, we reverse the district court's denial of the writ of habeas corpus, and remand with instructions.

## FACTS

Hall originally was sentenced to death for armed robbery and the felony murder of Henry Williamson, the clerk of a liquor store. At trial, Hall took the stand in his own defense and testified that he, James Smith, and Johnny Watford had been driving around in the early evening in Watford's car, that Hall asked them to stop at the Three Points liquor store so that he could buy some whiskey, and that he went inside the store alone, unarmed, and unmasked. Proceeding to the cash register with his bottle, Hall saw the clerk on the floor behind the counter. Believing Williamson perhaps was having a heart attack, Hall went behind the counter to aid him, and was surprised by two masked armed men. Hall raised his hands, but one of the masked men spoke to Hall, saying "you ain't going to have to pay for your whiskey tonight." Hall recognized Watford's voice. Smith, the other masked man, ordered Hall to open the cash register, but Hall refused. Smith then gestured with his gun toward Hall, who, out of fear for his life, opened the cash drawer. At about that time, a customer, Jerry Owens, entered the store. Hall was ordered by Smith not to say a word. When Owens reached the counter with his purchase, Smith forced him to lie on the floor behind the counter. Smith then fired toward Williamson and toward Hall, fatally wounding Williamson and also hitting Hall, a bullet passing through his left arm, the left side of his chest, and lodging in the right side of his chest.

Hall fled the store with at least one man, and was taken home to his wife. Hall testified that Smith refused to take him to the hospital, suggesting that Hall would be held accountable for the robbery. Hall was eventually arrested in Alabama, after he had attempted to contact a lawyer.

Jerry Owens's testimony corroborated Hall's testimony that Hall had neither gun nor mask, although Owens stated that he never saw a second masked man. The liquor store had a partition separating it

from an adjacent grocery, however, with one clerk tending both stores, and Hall testified that Watford had gone into the grocery store side of the establishment to keep a lookout.

Watford testified that he had lent his car to Smith and Hall, and that when they returned Hall was wounded and complained that Smith had "let the man shoot him." Watford testified for the state that he did not participate in the robbery at all.

The trial judge instructed the jury in part as follows:

> I give you a certain presumption of the law. Presumption is a conclusion which the law draws from certain facts. This presumption is rebuttable, however, that is it is subject to being overcome by evidence to the contrary. The acts of a person of sound mind and discretion are presumed to be the product of the person's will. A person of sound mind and discretion is presumed to intend the natural and probably consequences of his act. But these presumptions may be rebutted.

The jury convicted Hall of felony murder and armed robbery, and he was sentenced to death. The Georgia Supreme Court, however, reversed the armed robbery conviction, holding that it was a lesser included offense of felony murder. In addition, Hall's death sentence was remitted to life imprisonment on proportionality grounds as Smith, the triggerman, had received only life imprisonment in a separate trial. *Hall v. State*, 241 Ga. 252, 244 S.E.2d 833 (1978).

▮ Hall filed a state habeas corpus petition, which was denied by the trial court.[1] The written order makes no reference to Hall's burden-shifting claim, although the claim was presented at the hearing and orally denied by the judge. The Georgia Supreme Court denied Hall's application for a certificate of probable cause to appeal. Hall then filed a motion for a new trial. That motion was also denied, and the Georgia Supreme Court denied Hall's application for discretionary appeal.

After an initial abortive attempt, Hall filed the instant federal habeas petition, alleging, inter alia, that the burden-shifting instruction violated his constitutional rights. The district court, without a hearing, denied relief without discussion of the burden-shifting claim, and denied Hall a certificate of probable cause ("CPC"). This court granted CPC, and now reverses.

## DISCUSSION

Almost twenty years ago, the Supreme Court declared that "the Due Process

---

1. The state judge, who had presided over the state trial in the case that became *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), told Hall that "I understand the Case of *Franklin v. Frances* [sic] probably better than any judge in this State." He denied relief, orally holding that "*Sandstrom* [*v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979),] is not retroactive." The retroactivity issue has not been raised before this court by either of the parties, perhaps because it is now clear that a burden shifting error must be accorded retroactive effect despite the fact that the defendant's conviction was final when *Sandstrom* was decided. In *Teague v. Lane*, — U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the United States Supreme Court identified the retroactivity doctrine to be applied where a new constitutional rule has been created after a defendant's conviction became final. A majority of the court held that Justice Harlan's retroactivity doctrine should apply, although the Justices disputed the exact parameters of Justice Harlan's second exception. Justices Stevens and Blackmun concurred, and under the narrowest concurrence rule, *United States v. Marks*, 430 U.S. 188, 193, 97 S.Ct. 990,

993, 51 L.Ed.2d 260 (1977) that concurrence becomes the binding precedent of the Supreme Court. Justice Stevens explicitly disapproved the plurality's restriction of the "fundamental fairness" exception to "factual innocence," stating that "factual innocence is too capricious a factor by which to determine if a procedural change is sufficiently 'bedrock' or 'watershed' to justify application of the fundamental fairness exception." — U.S. at ——, 109 S.Ct. at 1081. Even under the harsher standard of the four justice plurality, however, a burden-shifting error would be subject to retroactive correction on habeas review because not only is it a "bedrock, 'axiomatic and elementary' [constitutional] principle," *Yates v. Aiken*, 484 U.S. 211, 108 S.Ct. 534, 536, 98 L.Ed.2d 546 (1988) (quoting *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (quoting *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970))), but it is also an error that diminishes the "likelihood of an accurate conviction." *Teague*, — U.S. at ——, 109 S.Ct. at 1077 (plurality). Accordingly, we hold that Teague is no bar to the application of *Sandstrom v. Montana* and *Francis v. Franklin* in this case.

Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *accord Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977). Furthermore, the Court has made clear that burden-shifting instructions may violate that due process clause protection. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Yates v. Aiken*, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988). In this case, the trial judge gave instructions almost identical to those found constitutionally infirm in *Francis v. Franklin*.[2] Nonetheless, the state argues that because the offense was felony murder rather than malice murder, there was no error in the burden-shifting instruction as intent to kill was not at issue in the trial. The state, however, overstates its case when it concludes that because intent to kill was not at issue, intent was not an issue at all.

■ Under Georgia law, as the jury was instructed, felony murder requires the jury to find that the defendant caused the death of another human being during the commission of a felony. The felony charged in the indictment was armed robbery, and the jury was instructed that a person commits armed robbery "when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by the use of an offensive weapon." Theft was defined for the jury as the unlawful taking of "any property of another with the intention of depriving him of

said property."[3] Thus, in order to convict of felony murder, the jury had to find that the defendant caused the death of another while committing a crime involving the intentional theft of property. Intent, therefore, was very much at issue, especially in light of Hall's coercion defense, which amounted to a defense of no criminal intent. The commission of a felony was a necessary predicate for felony murder, and intent was an element of the underlying felony of armed robbery. If, in the absence of an erroneous instruction on intent, the jury would not have found that Hall committed the felony, then the jury could not have convicted on the felony murder count. Accordingly, we must examine the burden-shifting instruction in the context of the jury instructions as a whole to determine whether it "could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of the offense...." *Francis v. Franklin*, 471 U.S. at 313, 105 S.Ct. at 1971.

■ The instruction told the jury that "[t]he acts of a person of sound mind and discretion are presumed to be the product of the person's will." The presumption here was mandatory, although rebuttable. So was the presumption in *Francis v. Franklin*. *Id.* A juror hearing the instruction could reasonably have believed that the burden was on the defendant to show that he did not intend to do what he did, that his acts were not the product of his "will." Hall does not contend he was mentally infirm, but rather that he acted out of fear for his life, with no criminal intent. In other words, he asserts that the acts he performed in the liquor store were

---

**2.** In *Francis v. Franklin* the trial judge instructed the jury on intent as follows:

The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted.

471 U.S. at 311–12, 105 S.Ct. at 1969–70.

**3.** The judge's instructions on the substantive law track the language of the applicable statutes, O.C.G.A. § 16-5-1(c) (felony murder) and O.C.

G.A. § 16-8-41(a) (armed robbery), and are supported by the state case law. The Georgia Supreme Court has made clear that "[p]roof of the elements of the offense of felony murder necessarily requires proof of the elements of the felony." *Woods. v. State*, 233 Ga. 495, 212 S.E.2d 322, 326 (1975). Obviously then felony murder "require[s] that the defendant possess the requisite criminal intent to commit the underlying felony." *Holliman v. State*, 257 Ga. 209, 356 S.E.2d 886, 887, *cert. denied*, 484 U.S. 933, 108 S.Ct. 306, 98 L.Ed.2d 265 (1987).

not a product of his will but of another's coercion.

At oral argument the state asserted that if Hall was coerced, his participation was a product of his will, even if he did not want to participate. The state would have us hold that Hall's act to assist the robbery *was* a product of his will, that although Hall did not *want* to participate, nonetheless he did—and not by accident; thus, he had the requisite intent. We disagree. Although Hall's muscles responded to the neurological impulses directed from his brain, that nexus does not provide the *mens rea* that is necessary to constitute a crime. Of special significance in this case, where the intent to commit theft was at issue, is *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, where the Court revisited *Morisette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (presumption of intent to commit theft where defendant removed shell casings from government property), in the context of a burden-shifting error. In *Morisette,* the Court, noting that a presumption of intent "conflict[s] with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime ...," 342 U.S. at 275, 72 S.Ct. at 256, held that the trial judge had committed error in instructing the jury, as to theft, that the felonious intent of the taking "is presumed by [the defendant's] own act...." 342 U.S. at 249, 72 S.Ct. at 243. In effect, the instruction given the jury in Hall's case performed the same office: it removed the presumption of innocence and relieved the state of the burden of proving beyond a reasonable doubt that Hall intentionally committed the felony of armed robbery because the jury was instructed to presume that Hall intended to perform his actions.

▆▆▆ That elsewhere in the instructions the trial court properly stated that the state bore the burden of proof beyond a reasonable doubt as to every element did not cure the error of the burden-shifting instruction. In *Francis* too the trial court stated that the state had the burden of proof on every element of the offense, but there the Supreme Court noted that there was no assurance that the jury heeded the proper instruction while ignoring the erroneous one. *Francis,* 471 U.S. at 322, 105 S.Ct. at 1975. *See also Sandstrom,* 442 U.S. at 526, 99 S.Ct. at 2460. ("[E]ven if a jury *could* have ignored the presumption and found defendant [sic] guilty because he acted knowingly, we cannot be certain that this is what they *did* do.") (emphasis in original). Moreover, in this case as in *Francis,* the proper instruction was not linked to the erroneous one in such a way as to explicate it or to make clear that the proper instruction was preeminent and controlling. "Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity." *Francis v. Franklin,* 471 U.S. at 322, 105 S.Ct. at 1975; *see Dobbs v. Kemp,* 790 F.2d 1499, 1507 (11th Cir.1986), *modified on other grounds,* 809 F.2d 750, *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987); *Lakes v. Ford,* 779 F.2d 1578, 1581 (11th Cir.1986); *Brooks v. Kemp,* 762 F.2d 1383, 1389–90 (11th Cir.1985) (en banc), *vacated for reconsideration,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *reinstated,* 809 F.2d 700, *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987); *Davis v. Kemp,* 752 F.2d 1515, 1518–19 (11th Cir.) (en banc), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). Similarly, the trial court's instruction that coercion was a defense did not correct the previous error reversing the burden of proof on intent because in attempting to give effect to two contradictory instructions the jury could have obeyed either or neither of the court's instructions; such caprice and uncertainty do not satisfy the Constitution.[4]

---

4. The state argues in its brief that coercion is no defense to felony murder and that, therefore, as coercion was Hall's only defense, the defendant is "necessarily guilty" and proof of intent is "simply irrelevant." The state's reading of its law would permit a bank customer to be prosecuted for murder because she handed over the money to the bankrobber after he had killed the teller. We do not believe that is the law of Georgia, nor do the cited cases support such a conclusion. Indeed the rationale apparently underlying Georgia's rejection of coercion as a defense

Erroneous and contradictory instructions frustrate a jury's attempt to "speak the truth" through its verdict. Furthermore, the trial court's following instruction that "[a] person will not be presumed to act with criminal intention" does not cure the constitutional error. In *Francis* such an instruction also was given and was held not to obviate the error. 105 S.Ct. at 1974. The State has contended before that a judge's instruction to the jury that "a person will not be presumed to act with criminal intent" cured the error of a burden-shifting instruction, and this court previously has ruled that such a "contention must fail in light of *Francis v. Franklin....*" *Drake v. Kemp*, 762 F.2d at 1453. We conclude that the burden-shifting instruction violated the due process clause of the constitution because it relieved the state of its burden of proving, beyond a reasonable doubt, that Hall intentionally committed the felony which was the necessary predicate for a felony murder conviction.

## HARMLESS ERROR

■ Although the Supreme Court initially left open whether a burden-shifting error may be harmless, the Court has now travelled the path trod by this court when, in *Davis v. Kemp*, 752 F.2d 1515, 1520–21, we held that a burden-shifting error may be held harmless if it is harmless beyond a reasonable doubt. *Rose v. Clark*, 478 U.S. 570, 579–82, 106 S.Ct. 3101, 3106–08, 92 L.Ed.2d 460 (1986). In *Davis v. Kemp*, this court identified two situations where harm-less error analysis would be appropriate: where the evidence of the defendant's intent was overwhelming or where intent was not at issue in the trial. 752 F.2d at 1521. *See also, Bowen v. Kemp*, 832 F.2d 546, 548–49 (11th Cir.1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988). Here not only was intent at issue, it was the central issue at trial. In *Carter v. Montgomery*, 769 F.2d 1537, 1541 (11th Cir.1985), we noted that where *mens rea* was at issue, the state must clear a high hurdle to show that the error of the burden-shifting instruction on intent was harmless because a defense of lack of intent "substantially reduces the extent to which evidence against the defendant can be considered to be 'overwhelming.' " [5]

We conclude that the evidence of intent clearly was not overwhelming; therefore we find that the burden-shifting constitutional error was harmful.[6] Hall testified that the robbers surprised him in the store, and he complied with their instructions out of fear for his life. Owens corroborated Hall's testimony that he was unmasked and unarmed. The only person to contradict Hall's testimony was Johnny Watford, who denied that he participated in the robbery. He, however, proffered no evidence that Hall had been a willing participant in the robbery, testifying only that he earlier had seen Hall with Smith, the triggerman, an innocuous fact admitted by Hall. Watford also reported that Hall had protested the fact that Smith had permitted Hall to be shot. Hall's testimony, on the other hand,

---

to felony murder, that one should sacrifice one's own life before killing or helping to kill an innocent victim, is inapplicable in the felony murder context. *See, e.g., Thomas v. State*, 246 Ga. 484, 272 S.E.2d 68 (1980) (code history suggests adoption of "common law approach that one should die himself before killing an innocent victim").

The state has set up a position which would by-pass all consideration of a burden-shifting instruction on intent because under state law, as glossed by the Attorney General in his brief, "proof as to intent in this case is simply irrelevant...." Without passing on whether such an abrogation of the intent requirement would be constitutional, we note that the state courts are the better forum to litigate the substance of the state criminal law, especially where, as here, the

state concedes that the petitioner has exhausted his state remedies.

**5.** "Although some opinions talk in terms of overwhelming evidence of *guilt*, (which will obviously always include the necessity of overwhelming evidence of intent), the analysis in the text makes it clear that the crucial inquiry relates to whether or not there is overwhelming evidence of intent." *Davis v. Kemp*, 752 F.2d at 1521, n. 10.

**6.** We note that the trial judge, who heard the testimony first hand, acknowledged in the standardized "Report of the Trial Judge" that although the evidence was sufficient to sustain the conviction, it did not "foreclose all doubt respecting the defendant's innocence."

was that he said to Smith, "My God, help me, I am shot." (Tr. at 436). Taking the evidence in the light most favorable to the state, the evidence of intent is far from overwhelming. On this record, therefore, we conclude that the error was not harmless. Accordingly, we REVERSE the district court's denial of relief and REMAND to the district court with instructions to grant the writ of habeas corpus unless the state elects to afford Hall a new trial within a reasonable period, to be determined by the district court.