A95A0882. IN THE INTEREST OF W. C. J., a child.
A95A1089. IN THE INTEREST OF E. R., a child.
(462 SE2d 168)

RUFFIN, Judge.

W. C. J. and E. R. appeal from the juvenile court's delinquency adjudications upon finding they committed the delinquent acts of murder and armed robbery. Both appellants were 16 years old at the time of the events giving rise to these adjudications.

Viewed in a light to support the adjudications, the evidence shows that W. C. J. left school in his car with schoolmates, Keith

Green and the victim, as passengers. They later picked up E. R. and another co-defendant, E. N., and Green ordered W. C. J. to drive to Blue Springs Road. Green told W. C. J. to stop the car at the end of a dirt road. While discussing buying drugs with W. C. J., Green asked the victim for his necklace. When the victim began to laugh, Green jumped out of the car, pointed a gun at the victim and demanded his money. W. C. J. allegedly then said to Green, "Keith, don't pop him in my car." Green then waved his gun at everyone and ordered them all out of the car. The victim pleaded for help, and Green demanded that he shut up. Green pointed the gun at W. C. J. and ordered him to search the victim's pockets wherein W. C. J. found four $20 bills and three $1 bills. Green told W. C. J. to get back in the car and ordered E. R. at gunpoint to remove the victim's necklace. As E. R. removed the necklace, Green ordered the victim to his knees. The victim continued to cry and plead for his life. W. C. J. then allegedly stuck his head out of a car window and said to Green, "Keith, pop him and let's go." Green then fired six shots from a chrome revolver with a brown handle. The first shot was fired at point blank range, striking the victim in the head as he knelt. When the victim fell to the ground, Green stood over his body and fired the remaining shots to his head and upper left arm. Green, E. R., and E. N. then got back in the car and fled the scene. E. R. stated that Green and W. C. J. warned him and E. N. that if they were asked about the victim, they were to say they dropped him off to see a girl. W. C. J. then dropped E. R. and E. N. off at a grocery store.

W. C. J. and E. R. gave custodial statements which were introduced at trial in which they essentially admitted the facts set forth above. They admitted that prior to the shooting, Green discussed with them his desire to rob and shoot someone in order to gain rank in a street gang. W. C. J. only denies having made the statements attributed to him. However, he admitted taking the victim's money, receiving two $20 bills after the boys divided the money, and driving to a housing project where he threw the victim's school books into a dumpster. In addition, the victim's mother testified that she spoke with W. C. J. on the morning following the shooting to ascertain her son's whereabouts and that W. C. J. admitted the victim was with him the day before, but he told her he dropped the victim off to see his girl friend. After the shooting, W. C. J.'s mother gave the police two $20 bills which W. C. J. said he took from the victim.

E. R. admitted taking the victim's necklace which the police later recovered from his dresser. The evidence further shows that on the day before the shooting, a witness saw Green give E. R. a silver gun. The witness also testified that after the shooting, she saw Green pointing his finger at E. R., as if he were firing a gun, and E. R. pretending to fall as if he were shot. On the evening following the shoot-

ing, E. R. reported the incident to the police using a false name, address and telephone number.

1. W. C. J. and E. R. contend the evidence was insufficient to support the adjudications of delinquency beyond a reasonable doubt. They argue that the evidence instead shows that after Green pulled the gun, they were coerced into participating in the armed robbery and murder; that they had no prior knowledge that Green would rob or kill the victim and thus were not part of a conspiracy; and that their cooperation with the police investigation and the preparation of the case against Green demonstrates they were not parties to the crimes.

"One does not have to be the actual 'trigger man' to be convicted of murder in this state as long as the evidence is sufficient to demonstrate that one is a party to the crime. [Cit.]" *Thomas v. State*, 246 Ga. 484, 486-487 (272 SE2d 68) (1980). " 'Mere presence at the scene is not sufficient to convict one of being a party to a crime,' but criminal intent may be inferred from conduct before, during, and after the commission of the crime. [Cit.]" *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992).

W. C. J. and E. R.'s admissions that they took the victim's money and necklace, respectively, demonstrated that they aided and abetted the armed robbery and therefore were parties to the armed robbery. See *Dowdy v. State*, 209 Ga. App. 95 (1) (432 SE2d 827) (1993). Whether or not they were coerced was a question for the trier of fact. *Hill v. State*, 135 Ga. App. 766 (219 SE2d 18) (1975). Furthermore, the trier of fact could infer from W. C. J.'s and E. R.'s conduct during and after the shooting, including but not limited to W. C. J.'s acts of concealment and E. R.'s failure to disassociate himself from the criminal enterprise, that they were not "merely present" but were actual parties to the murder. See *Sands*, supra; *Tho Van Huynh v. State*, 257 Ga. 375 (359 SE2d 667) (1987). Accordingly, there was sufficient evidence for the juvenile court to find beyond a reasonable doubt that W. C. J. and E. R. committed the delinquent acts of murder and armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. W. C. J. also enumerates as error the juvenile court's reliance on E. N.'s testimony regarding the statements W. C. J. allegedly made to Green prior to the shooting. W. C. J. contends this uncorroborated testimony of an accomplice is the only evidence which implicated him as a party to the shooting.

" 'In Georgia the testimony of an accomplice used to convict the accused of a crime must be supported by independent corroborating evidence as to the identity and participation of the accused tending to connect him to the crime or leading to the inference that he is guilty.' [Cit.] However, slight corroboration of the accomplice's testimony is

sufficient. [Cit.]" *McCoy v. State*, 185 Ga. App. 221, 222 (2) (363 SE2d 628) (1987). In the instant case, E. N.'s testimony was sufficiently corroborated by W. C. J. and E. R.'s custodial statements which were introduced at trial. Moreover, contrary to W. C. J.'s contention, his alleged statements to Green were not the sole evidence linking him to the shooting.

*Judgments affirmed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED SEPTEMBER 6, 1995.

*B. C. Mathis, Jr., Craig S. Mathis*, for appellant (case no. A95A0882).

*David Perry*, for appellant (case no. A95A1089).

*Watson, Spence, Lowe & Chambless, Stephen S. Goss, David H. J. Martyn, Baxter C. Howell, Jr.*, for appellee.